is case number 25-1076, Alex Reinig et al. versus RBS Citizens NA. Mr. Swidler, take a moment and tell us whenever you're ready. Good morning, Your Honors. I'd like to save three minutes for rebuttal, please.  Thank you. May it please the Court. My name is Justin Swidler. I'm here today with my partner, Josh Boyett. We are the appellants in the Reinig v. Citizens bank case. This case involves the application of—this appeal, I should say, involves the application of Pennsylvania law and Massachusetts law. I will start with Pennsylvania law, and then I will go to Massachusetts law. The question before the Court is what it means for under the Pennsylvania Minimum Wage Act, where it states that an employee shall be paid at least one and a half times the regular rate for all overtime hours worked. Citizens' Compensation Plan pays employees a base hourly pay, an hourly pay at 1.5 times the regular rate, and we do not challenge the hourly rate part of that in this appeal. We understand. This case is about what happens to the commission pay. Correct. And none of the precedents you cite or the other side cites are directly on point. You know, Macklin did not involve commissions. Macklin involved a flat bonus for a shift. You know, Chevalier didn't involve this exact scheme. So why is it that we should treat commissions where inherently you get more money for working more time the way that Macklin treated it, a bonus where a big part of Judge McHugh's analysis, not binding on us but maybe persuasive, was that you made less money, a lower amount hourly rate for working more hours. Those were persuasive graphs, but they don't apply here. Well, they do, Your Honor, because if you take a look at the very examples that both the defendant and the court have looked at, you can see that there is a declining hourly rate. In fact, the more an employee works in Citizens Bank, while they do make more, just like under fluctuating work week, each hour you work you do get a little bit more, but the marginal rate goes down. And if you, for example, Oh, you're making more commissions. The commissions keep pace with the number of hours. Not necessarily. I mean, there's absolutely nothing in the record to suggest that the commissions correlate with hours, certainly not on a one-to-one basis the way they would, for example, with hourly pay. Who bears the burden of proof on that? You say there's nothing in the record. If the record is silent, don't you lose as plaintiff? The employer has to pay one and a half times the regular rate. The idea that there might be some correlation between commissions and hours worked does not solve the problem of whether there's actually being paid at one and a half times the regular rate. The court's example, and I think the math is important, especially because you started with the dilution question. The court stated at Appendix 26 that it did not see the problem that was present in Chablis, because it said that because there's hourly pay, it did not claim this was true with commissions. Because there's hourly pay, the amount does not go down each hour. The example that the court used, and is also in the defendant's opposition at 28, was an employee in Citizens Bank who makes $11.50 an hour, who works 45 hours a week, and makes $2,000 in commissions. According to the math, which, again, is at Opposition 28, the total pay would be $2,657.35, and that's because you get $11.50 for 40 hours, you get $17.25, that's the hourly overtime, and then you get $2,000 in commissions, for which then what they do is they take $2,000, divide by 45, multiply it by .5, which is obviously what's challenged here, and get to $111.10. If you take that same employee, and they only work 40 hours, what that would mean is they make $11.50 times 40 hours, which would be $450, and they'd also make the $2,000 in commissions. Help me to understand the broader point you're making, because you're diving very straight into the math. We're talking about the PMWA here, right? That's correct. You are not pushing an FLSA claim. 100% true. You don't seem to contest the FLSA doesn't entitle you to this. It's just PMWA. Absolutely. If the FLSA came first, then the PMWA, what's to say that PMWA didn't incorporate the FLSA? It talks about regular rate. It doesn't define it. It looks like it was working in conjunction with the FLSA. Now, Pennsylvania is free to do more, but why shouldn't we read it as tracking? It's a very good question. This is precisely why Chevalier is so informative to the court, because in Chevalier, of course, they were using FlexWay and WorkWeek, which is authorized by the FLSA regulations at 29 CFR 778114. The Superior Court, to which the Supreme Court affirmed, found that Pennsylvania's regulatory decision not to incorporate that was a decisive, not accidental act, because they did incorporate some, but not all of that subchapter. Specifically, they did incorporate 29 CFR 778112, which is the day rate regulation, which allows you to divide and use a .5 multiplier on day rates, but they did not allow it for salary. Similarly, 778.119 is the federal regulation that allows a .5 multiplier on commissions. Pennsylvania did not adopt 778119. They specifically chose not to. But Chevalier explains what the court should consider about that decision. Okay, you talk about what wasn't adopted. Tell me what in the law we should look at. Walk me through a specific passage in Chevalier or a specific passage in the PMWA or something else that you think affirmatively supports your reading, because I'm being blizzarded with a bunch of numbers, but you haven't explained a reason. Sure. In Chevalier, and this is at 220A3D1046. 1046. Hang on. I've got it right here. Where on 1046? That is a fair question, Your Honor. Give me one second. Okay. Yeah, I'm on 1046. The problem is my printout is not. Just tell me what the paragraph starts with. Sure. So under Section 2, Trial Court Proceedings, it's the third paragraph. It says, and there are several filings. There are several filings. There's not a topic sentence. I'm sorry. The topic is at 1042. 1042. Okay. Trial Court Proceedings. And then the third paragraph, and there are several filings. Okay. That's on page 1042. Got it. Okay. And then about halfway through the paragraph, it says, rather than incorporating the federal provisions in toto, the Pennsylvania regulations selectively adopted aspects of the federal provisions. All right. This is all about the contentions of the parties. It's not about what the court is holding. That is true, but the court ultimately affirms that later on. No, no, no. Tell me what in their holding or their reasoning you're pointing to. Sure. If you go to, this is now towards the end of it. And 1050. 1050. Okay. There's a whole bunch of plaintiff's contentions on 1050. It's not the court's reasoning. The analysis starts on 1051. Your Honor, I'm sorry. I apologize. If you could go to, and I do apologize, but if you go to page 326, or it's in 1977. Hang on. I'm sorry. 1056, yes. Okay. All right. And the, it looks like the first full paragraph on the page is in 1977. And then if you go to the next paragraph. Finally, and most relevantly. Right. It says, it says subsection 23143B provides explicit instruction on the calculator of overtime employees paying on a day or job rate basis dictating the regular rate is determined. And this is talking about the adoption of 778-112. Okay. I see this. And then at the very end, at 1058, conspicuously absent from the Pennsylvania regulations. Where is the conspicuously absent? This is on page 1058. Okay. Conspicuously absent from Pennsylvania regulations. First full paragraph on that page. Is there any reference, positive or negative, to the use of FWW method for salaried employees working fluctuating hours as first approved in MISL and later adopted in 778-114 of the federal regs? Both parties use the secretary's silence in this regard as an indication of the adoption of their constructions. As we've noted, both parties have legitimate interpretations of the ambiguity created by the regulatory void. It ends by saying, we conclude the rules of statutory construction favor plaintiff's interpretation requiring application of the 1.5 multiplier. The interpretation is further. Where is? Oh, I'm sorry. This is continuing down that page. I didn't see a page break, but this is the third to last paragraph of the decision, though. Okay. As noted above. Right. And then the last sentence there is, we conclude the rules of statutory construction favor plaintiff's interpretation. The following paragraph. This interpretation is further supported by the secretary's overt application of 0.5 per day and job rate comp by adopting section 7878. Okay, but the commissions are not an issue here. No, but the point here is they found it informative that the Pennsylvania did not adopt 778-114 as evidence that the court did not, that the statute does not authorize 0.5 for flood for salaries. They say, look, we'd much rather that there was a reg that won one way or the other, but we're going to squint at this, and we're going to draw a negative inference from not adopting the federal reg. That's very faint support, it seems, for your position. Is there anything more direct? Well, sure. I mean, Chevolier itself dealt with commissions and salary and found that both were entitled to the 1.5 multiplier. I mean, in our view, that is controlling on the commission aspect of this. Chevolier deals with salary plus commissioned employees, of course, and they applied the 1.5 to both parts, not just one or the other. I don't think that's right, that Chevolier is explicit about the commissions part of this. I think footnote 7 carves it out, and that's clear. If we go back to the regulatory silence point, you know, I've read it. I see the PA Supreme Court saying that in 2019, and then we have Pennsylvania issuing new guidance in 2022, where they, again, expressly declined to reach the issue of commissions. And can you speak a little bit to how you piece those things together and what we make of the silence, given that in 2022 they say the department concedes that this new subject only clarifies the regular rate for salaried employees eligible for overtime. So they had a chance, and they say, we're just not going to do this right now. Well, I think that, one, the guidance does talk about 778.112 being an outlier, and that the only time Pennsylvania has explicitly authorized a 0.5 multiplier is in this instance of the day rate, and they refer to that as an outlier. All the policy arguments behind why Chevolier comes out the way it does supports giving a 1.5 multiplier here, and this does get back to the math. I do realize that I haven't gotten to Massachusetts. I mean, I wanted to say three minutes for a vote. Can I keep going? Please continue. All right, thank you. Thank you, Your Honor. The ultimate point of the Pennsylvania Minimum Wage Act, when there's an ambiguity, under Pennsylvania Rules of Statutory Construction is you go to the purpose of the act, which was to fight excessive hours and reduce pay. If I could go back to the math, do you think the math does demonstrate why the laws supports providing a 1.5 multiplier here? I understand how it does for salaried employees, because that declining curve was helpful in Macklin, but I don't see how it matters for variable forms of compensation like these commissions. So if you could focus on that, that would be helpful. Well, absolutely. I mean, first, it's not hourly compensation, so it is not the case. I think this is an important point. I don't think that it is a correct statement to say the commissions go up with hours worked. It might be, right? I mean, why would you work more if you didn't expect to make commissions? Well, the problem with the sales job is that many leads go nowhere. Sure. So in theory, it could go either way. The point is it's just like a performance bonus. I mean, as you perform better, you do get a performance bonus. It's more, I think, akin to a performance bonus than hourly pay. Under the example, which both parties agreed in the district court, this is how the Citizens' Compensation Plan would pay the employee. So as a matter of fact, at 45 hours under that example, the employee would have made $26,5735, which equates to $59.06 an hour. If the employee had worked 40 hours that week, so you get rid of the $17.25, you get rid of all the overtime bonuses paid on the commissions. It's just $11.50 times 40 plus $2,000 in that example. The employee would make $2,460, which equates to – I'm sorry. Right. So if you worked 40 hours, you'd make $61.15 an hour, just a little bit more per hour than if you worked 45. But if you look at the marginal rate, the marginal rate per each overtime hour, because he's making $197.35 for the last five hours that he worked. That's the difference between if he works 40 or 45 in this example. The marginal rate is $39.47 an hour, and if you work 50 hours, that number goes down more. So what that means from the employer's perspective is I am incentivized to have the same employees work more and more hours because I get to pay them less and less each hour for each additional hour they work. And the employee is being inversely incentivized to work less hours because he's getting paid less for each marginal hour. That is authorized, of course, under federal law, but that is not authorized under Pennsylvania law. There's no regulation in the state that allows that. So the same policies and the same concerns that were at issue with Shelfalier, we don't have the federal regulation. We have the declining marginal rate being paid to the employee. It exists in Citizens' Compensation Plan, and it violates the Pennsylvania Minimum Wage Act for that reason. All right. Thank you. Mr. Swidler, we'll get you back on rebuttal. Can I talk about Massachusetts for one minute, or am I out of time? Well, if questions come up about Massachusetts, we'll ask them on. Thank you so much, Governor. Ms. Waters. May I begin? Thank you. Good morning, Your Honors. Kim Waterson. May it please the Court, I am here representing, I'll shorthand it to Citizens Bank, and I want to just introduce my colleague, Ted Hages, who's over at the Council table. Before I turn to the specifics, and I am going to turn to the specifics, and I am going to talk about the three or four points that this Court keyed in on in my argument. But before I turn to the specifics, I just want to start with, and I think it's important to start with, a few words about guideposts and cardinal rules that control this case. And I know this Court well knows them, but I'd like to take a few minutes. Plaintiffs' arguments at bottom ask this Court to create new state law liabilities. This Court shouldn't do so. As this Court has constructed time and time again, federal courts sitting in diversity must exercise restraint, as this panel well knows, when asked to create or expand state law beyond its existing confines. I found something that this Court said in the Traveler's case, which we cite on page 40 of our brief, to be very compelling. Where two competing yet sensible interpretations of state law exist, we should opt for the interpretation that restricts liability rather than expands it. So given these mandates, and I think Judge Bibas, you asked a question about burden. I think on this foundational legal question about what the law is, plaintiffs do bear a burden, and they bear a very heavy burden that comes from Erie. They needed to show that their interpretations of Pennsylvania and Massachusetts law are the only sensible ones, and they haven't done that. Here, moreover, I think it's particularly important to exercise the restraint that federalism demands, where employees have modeled their pay practices for hourly employees who earn commissions, and I'm underscoring commissions, because that's where the rubber is hitting the road, based on these regulations that have existed for decades, and without any indication in either Massachusetts or Pennsylvania law that these pay practices, again, for hourly employees who earn commissions. Why doesn't the math that animated the concern in Chevalier and then in Macklin, why doesn't that same math work the same way here for these commissions? Your Honor, this is exactly where I wanted to go. Commissions are different, and I was listening very carefully to the exchange here. Salary is the pay that you get for the hours worked, even though you don't have to clock in for a set amount of time, but it's tethered to hours spent on the job, hours worked. Macklin, that bonus was inextricably tied to how many hours that employee worked. Commissions are entirely different. They are not compensation for the number of hours you work, nor are they based on the number of hours you worked. They are how productive you are when it comes to sales. The word performance bonus was used. It's how good you are at your job. So counsel, your friend correctly pointed out, you might work a bunch of overtime and not make any sales. You don't get any commissions. But on the other hand, you might. It's variable, right? Well, Your Honor, I have two things to say in response to that. Let's talk about the overtime. An employee at Citizens, and I know that overtime on the hours worked, their hourly wages, aren't an issue, but I want to make sure and underscore in response to your question, an employee, an MLO at Citizens who works 25 hours of overtime, perhaps unfortunately doesn't own a bonus, maybe aren't as good at their job as another MLO, they are going to be paid, and they are paid, and there is no dispute, time and a half for each of those 20 hours of overtime. Right. Okay? Okay. They just won't get any commissions because they didn't make a sale. Employees do not have a right to a commission.  Now I get it. Commission is a part of compensation. It's a creature of contract. We talk about this a little bit more in the Massachusetts frame because the contract there was more at issue. But these employment agreements set out clearly what they're entitled to, and they're not entitled to a commission. But under the PMWA, like the FLSA, if you get remuneration in the form of commission and you also happened to work overtime, you get commission, excuse me, overtime on the commission. And we figure that out by, and no one disputes this, computing what the regular rate is. You know, and there's no dispute in Chevalier. They agreed with what the Superior Court concluded. Interestingly, notwithstanding the silence, following what the FLSA does when it comes to computing the regular rate and what denominator is used. So kind of foreshadowing some points I have to make about silence. And so, yeah, yes, an employee gets commission and they get overtime on commissions. But to the extent the court's concerned, Chevalier was concerned about the policy goals. You know, they want to make sure that you hire a workforce that's sufficient to get the work done. So you're not pushing and prodding your existing employees to work more. You know, hire a sufficient workforce, et cetera, et cetera. Increases employment, everything else. None of those considerations come into play when we're dealing with commissions. Again, that are not tethered to the hours you work. There could be an employee, an MLO, who worked 40 hours, who closed a bunch of loans in a particular month. He or she's good at what they do. They're efficient. You know, who knows why it is that they closed so many loans in only 30 hours. That component of their compensation has, again, nothing to do with hours. Nothing at all to do with hours. It is based on performance and productivity. It's meritocracy. And not treating the bonuses the way we treat it doesn't push up against any of the policy concerns, either the diminishing rate of return for number of hours worked, which is a problem because you're disincentivizing employees from not hiring a sufficient workforce. It's just different. Now, I know I'm telling you that. We just talked about eerie restraint, and I want to kind of tie a little bit of a bow here. This was not decided and considered in the, and this is a great debate, is it Chevalier or Chevalier? I will call it Chevalier. In the Chevalier decision, the court says, true, the employees did earn commissions and they were paid commissions, but they said the parties focused on and the court's analysis focused on. It even went so far as to say at one point, and I have the exact quote, that this case doesn't involve an analysis of the commissions, which are, I don't know if I want to say sui generis, but they are at least different and distinct from salaries and hourly wages and or in the Macklin case bonuses based on hours worked. So we've got a shaky foundation, if there's any foundation at all, to go from Chevalier to create a universal rule that we're always using a 1.5 I think this segues now directly into silence. My friend here will say, well, yes, you can extrapolate from Chevalier. You can make an eerie prediction because Chevalier was focused on, I'm using the word silence, you know, the failure to specifically adopt. And so the court knows the FWW method that was at issue there was not adopted by Pennsylvania. Let me ask you about Chevalier. So footnote seven, true, it's not focusing on, this is not about commissions alone, but the court did count the salary and the commissions when it calculated the regular rate for these employees. How does that square with your kind of purposive account that commissions are bonuses, they're not paid for hour work? Why are we giving, you know, the 0.5% treating it as part of this for purposes of the rate in the first place then? Well, let me come at this, Your Honor, a couple of different ways. The reason why they counted in computing the regular rate is that the PMWA, like the FLSA, instructs and mandates that employers pay overtime for all overtime worked on all forms of compensation. Okay, so it's very easy when we've got an hourly wage employee. The regular rate is the hourly rate. And so the FLSA specifically, in the statute that would apply here, not the FWW, specifically describes how you go about calculating the regular rate for purposes of a commission earned and in particular a commission earned that's paid after the monthly paychecks. Okay, Chevalier might have paid it all in one night, but we did a calculation showing it comes out the same. And so the federal regulation instructs that the numerator is the compensation. And when you're dealing just with commissions alone, it's just the commission amount divided by, and I'm going to come back to silence in a minute, the actual number of hours worked. There is a specific federal regulation that says this. I can find the number if I need to, but I'm not going to stop. Pennsylvania does not have any statute or regulation that aligns with the federal one when it comes to what I'm just going to call lagging commissions, just to give us a shorthand here. Interestingly, when the Superior Court in Chevalier took up the appeal, there were two issues before it. Silence was looming a bit large in that discussion. One was, what is the denominator? Is the denominator what the federal court says, or the federal regulation says is the denominator, actual number of hours worked, or is the denominator the traditional 40-hour work week? And then, of course, there was the multiplier issue, which the Supreme Court took up. The Superior Court borrowed the, I'm just going to use the word borrowed, notwithstanding that there is no Pennsylvania regulation on point, said we're going to, two judges, it was a somewhat split decision, said we're going to use the federal denominator. We're going to follow the federal statute, notwithstanding that there was silence. And Judge Solano had some very wise words in that opinion, which I can read if need be. We cite them in our brief as to why silence isn't enough to wholesale reject a look at the FLSA, which employers follow and has existed for a long time. Interestingly, Judge Donahue also, in her Supreme Court, I think it was a dissent, talks about silence and cites some case law. So one last question about that, and then I want to hear you say something briefly about Massachusetts. You put some leading on the timing of this pay, weekly versus monthly. Does that matter? What supports are paying attention to the timing of this? Your Honor, it doesn't matter for two reasons. First of all, it's just, it has to be done this way just because of the reality of when commissions are computed. But I wanted to check the math to figure this out, okay? And that's why there's the federal guidance, what do you do when it's coming late, okay? And before I forget, I want to say Chevalier Supreme Court decision takes no issue with the borrowing on the numerator. I almost forgot. But if I think it's, I can't remember if it's on page 28 of my brief, there's a place where I say, let's look at what citizens does. And your Honor, to your point, does it matter if they're paid at different times? The answer to that question is no. What I did was I looked at the hypothetical employee that Judge Wigand asked us to look at and did it the way that citizens does it. And they have to do it because commissions are paid later. So tranche one, your hourly wages and overtime on hourly wages. Tranche two is your commission and overtime on commission. Got that number, did the arithmetic. And then I said, okay, well, let's look at this hypothetical employee who according to the hypothetical earned $2,000 in commissions for a particular week. In which he or she worked 45 hours. And I said, okay, so what if they were getting paid all in one paycheck? They were getting the commissions and the bonus. Did what the PMWA instructs to do. Added up total comp, commissions, hourly wages. Divided by the approved denominator. Number of actual hours worked. And guess what? The numbers come out to be the same. So does it matter? No. To the extent that Macklin Court seemed to think that was a driving force in the Reinig decision, the trial court's decision below. No, it's just a fact. Massachusetts? Just briefly. Massachusetts, very straightforward. Plaintiffs claimed and argued below that somehow citizens took back and recaptured wages from earned commissions. An examination of the contract, which we discuss at length, which says over and over again, the fatal flaw is there. Nothing is subtracted from earned commissions. No one has a right to a commission. Commissions are controlled by formula. The particular formula here says gross commissions. Take gross commissions. You do a variety of deducts. One of those deducts is what would be represented in 45 hours of work. That's a deduct, and that's your earned commission. And not only is there a definition of earned commission, that the contract, which governs C cases in brief, says expressly a commission is not earned until after the deductions take place. Massachusetts case, federal case, excuse me, applying Massachusetts law, Klaber deals with this. So they're trying to rewrite the contract. They can't rewrite the contract. The contract says this is the formula for commissions. It's not taking back earned wages. The commissions weren't yet earned. It is a component in the formula. Finally, the two cases that plaintiffs relied upon in an attempt to seek reconsideration and resuscitate their Massachusetts claim that failed for all of the reasons I just articulated, I call them Sleepy's and Sullivan. They're Sleepy's, Sullivan, and Sutton. I smile, too. Judge Bovee, I never remember. Is it Sleepy's and Sutton, Sutton and Sleepy's? But anyway, in those two cases, there was a real big problem there that does not exist here as a matter of undisputed fact. In those cases, these were commission-only employees, and the formula for computing what commissions you earned subtracted every single... You were affixed an hour for minimum wage, so you were meeting the minimum wage laws because they were commission-only employees, and then they got overtime, how you compute overtime under Massachusetts law, which generally is not that different. And then, guess what they did? When they gave you your commission, they took all of your overtime, all of it, not just your draw, all of your overtime. So essentially, and the court did the one example, I work, and I work no overtime, and I earn $2,000 in commissions, okay? So they just take my wage out of it. My friend over here works 20 hours of overtime. Guess what? They took his overtime, too. I mean, I'm not trying to make it oversimplified, but the problem in that case was not about a recapture. It was about a basic violation of the Massachusetts overtime laws such that overtime was computed, but they took all your overtime. That does not happen here. There's no sense. The formula does not take away all of the overtime. Or the draw, right? Or the draw. Or the draw. Correct. Or the draw. It's a computation. That's been rejected because the theory, now I'm going back to the contract point, Judge Porter, plaintiff's theory from the beginning of the case, going way back to 2017 when it started, this recapture theory was built on an assertion that citizens recaptured a certain portion of wages, the draw. Like it was an advance. And the emphasis was from earned commissions. These commissions weren't earned, and it is not uncommon to have a commission calculation that has various and sundry offsets. But, again, I want to come back to Sleepy's and Sutton, which I guess I'm not surprised. The court found that problematic. So you worked overtime. You worked overtime. I guess nominally you were getting overtime because it was reflected in your pay. And then guess what? All your overtime is gone. It's as if you didn't even write overtime. Here, to rule for plaintiffs would not only create an eerie problem, you know, there's nothing in Massachusetts law that supports the application of Sleepy's here, and also it would just be a profound violation of the party's contract. All right. Thank you, Ms. Wallace. Thank you very much, Ernst. We'll get you back on rebuttal, Mr. Swidler, and I gave Ms. Watterson a minute to talk about Massachusetts, so we'll accord you an extra minute to talk about that too. Thank you. Just very quickly, as you heard from my adversary, the parties agree that commissions don't correlate with hours worked. It is a different type of pay, and as the math we talked about when I first presented, with an hourly employee in the example that the court and the defendant went through before this court, the amount per hour the employee gets for the first 40 hours is $61 per hour. If that was hourly pay, the overtime would be paid at $93.50. Instead, it's paid at $39 an hour. That shows that the weekly wages are not being paid at 1.5 times the regular rate for the overtime hours, and this is also why hourly pay is distinct from commissions and salaries, and it is true the footnote says this case is not about salary, but it says what we're looking at is the weekly compensation, the weekly wages paid. The weekly wages here, although they include an hourly component, for many of these employees it's predominantly commissions, and they are getting half time, not time and a half, for overtime work in violation of the Pennsylvania Minimum Wage Act, and we'd ask that you find that. You want to spend a minute or two, since that's all I have left, on the Massachusetts claim. Sunn is on all fours with this case. It is true the district court and my adversary say, well, in Sunn it was all commissions. It's not actually what happened in Sunn. If you go to Sunn, for example, footnote 15, Jordan's, and this is the employer in that case, contends that it merely applied the formula it had chosen for calculating the amount of an employee's commissions. The formula they had chosen in that case was they would pay minimum wage each hour. They'd pay time and a half of minimum wage each hour. Here it's $11.50, just barely over minimum wage. Then they would use every dollar they had paid to reduce the commissions to get the net earned commissions, just like this case. The Massachusetts Supreme Court also noted that, as Jordan's tracked all regular overtime and Sunday hours... Right, but the way that the text accompanying notes 15 interpreted it, the employer was basically rejiggering commission to count it as if it was the overtime compensation for the hours and effectively giving no additional overtime and Sunday pay.  That's not what's happening here. That's importantly different. No, this is what's happening here. Just to be clear, the compensation plans in this case refer to the base pay, which is 45 hours, not 40, as the draw amount. What they do for the overtime hours, I'm going to focus on the final five hours, is they pull $11.50 per hour as the draw amount out of the commissions. This does not make it material. It just makes it less of a violation. They keep the halftime, so the employees will keep $6.25 an hour. That is not a draw, but the $11.50, the time in time and a half, is a draw, so that an employee who works 45 hours gets a larger amount taken from their deductions, excuse me, from their commissions than the employee that works 40 hours. Now, the argument that this is just a formula, you heard my adversary say, that's what footnote 15 rejects. It's also important to note that the, and this is on page, I mean, it's on page 1,100. It says, these payments appear as separate lines on the sales employees pay stuff, but, and this is the Supreme Court of Massachusetts, not the employer conceding this. They were, in fact, not separate from, in addition to the sales employees' commissions because, as explained, super and negative draw balances were deducted from employees' future commissions. That's also true here. If an employee gets paid their $11.50 an hour and their $17.25 an hour, and it's more than the commissions that are due that pay cycle, that deficit carries forward indefinitely. It continues to build according to the compensation plan. It is treated as a draw. Now, most parts of the comp plans in this case actually use the term draw amount. They explicitly refer to it as a draw. As this case proceeded, I think citizens did take that language out, but they continued to treat the money exactly the same. They only dropped the pretense of the label. It is the same comp plan as signed, and it is true that the district court focused on this language, they're basically 100% commission, but that wasn't Jordan's position. Jordan's position was, no, they are hourly, they're getting overtime, and then we have this commission formula, which they're not earned until we take these deductions from those commissions. It's the identical argument citizens is making here. All right. Thank you, Mr. Swidler. We'll take the matter under advisement. We'd like to ask the parties to work together to get a transcript ordered and split the expense on this.